UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LYDIA L. MALONE,

                Plaintiff,

      V.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**REPORT AND
RECOMMENDATION**

08-CV-1249
(GLS/VEB)

# I. INTRODUCTION

In February of 2006, Plaintiff Lydia L. Malone applied for disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since March of 2002 due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's application. Plaintiff, proceeding *pro se*, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 3, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 22).

# II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB on February 22, 2006, alleging disability beginning on March 10, 2002. (T at 37).[1]  The application was denied and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").   A hearing was held on March 29, 2008, before ALJ Carl E. Stephan. Plaintiff appeared, waived her right to counsel, and testified. (T at 301-318).

On April 24, 2008, ALJ Stephan issued a decision denying Plaintiff's application. (T at 11-19).  The ALJ's decision became the Commissioner's final decision on September 18, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 3-6).

Plaintiff, proceeding *pro se*, commenced this action on November 20, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on March 25, 2009. (Docket No. 7).

On November 16, 2009, Randolph F. Treece, United States Magistrate Judge, issued an Order directing Plaintiff to file her supporting brief on or before November 16, 2009. (Docket No. 9).  On January 4, 2010, Plaintiff filed a letter requesting an extension of time to submit her brief. (Docket No. 10).   Judge Treece granted the request and established February 22, 2010, as the new brief submission deadline. (Docket No. 12). On February 23, 2010,  Judge Treece gave Plaintiff a further extension of time, setting April 22, 2010 as Plaintiff's brief submission deadline. (Docket No. 14).

On April 16, 2010, Plaintiff requested that the Commissioner be directed to submit

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 5).

2

a brief first. (Docket No. 19).  In a text order entered on April 20, 2010, Judge Treece granted Plaintiff's request and the Commissioner filed a Brief on May 10, 2010. (Docket No. 20).  Per Judge Treece's text order, Plaintiff was given an additional 60 days to file a brief.

On September 14, 2010, Plaintiff filed another request for an extension of time to submit her brief, which this Court granted on September 23, 2010. (Docket No. 25). Plaintiff did not submit a brief and the new deadline established by this Court expired on October 29, 2010.  Accordingly, this Court will deem the record complete.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, the Court generally proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.  In this case, because the Commissioner filed a brief and Plaintiff did not, the Court is technically faced with an unopposed motion by the Commissioner for judgment on the pleadings. However, out of an abundance of caution and given Plaintiff's *pro se* status, this Court will review the Commissioner's arguments on the merits.  While the benefits review process provides for deference to the Commissioner's administrative determination, "we must remember that '[t]he Social Security Act is a remedial statute which must be "liberally applied"; its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Marcus v. Califano, 615 F.2d 23, 29 (2d Cir.1979).

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied and that this case be remanded for further proceedings.

## III. DISCUSSION

**A.    Legal Standard**

3

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037,

4

1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age,

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007.  The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 10, 2002, the alleged onset date.  The ALJ determined that Plaintiff had the following medically determinable impairments considered "severe" under the Social Security Act: history of hypothyroidism, bilateral knee pain, depression, and anxiety. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 14).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform simple entry level work in a low stress environment at a light level of physical exertion. (T at 14-15).  The ALJ found that Plaintiff could not perform her past relevant work as a postal worker, as that occupation involved lifting greater than the maximum limit permitted by Plaintiff's RFC. (T at 18).

Considering Plaintiff's age (45 years old as of the date of alleged onset), education (high school), work experience, and RFC (low stress, light, entry level work), the ALJ

concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 18-9).  Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from the application date through the date of the ALJ's decision. (T at 19).   As noted above, the ALJ's decision became the Commissioner's final decision on September 18, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 3-6).

### 2.      Review of Commissioner's Decision

Plaintiff alleged disability based upon thyroid problems, anemia, depression, anxiety, excessive fatigue, knee pain, and acid reflux. (T at 56).  This Court will address the mental and physical impairments in turn.

### a.      Mental Impairments

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not

severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).  If the mental impairment is found to be severe, at the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal one of the listed impairments.  If the impairments do meet or medically equal one of the impairments set forth in the Listings, the claimant will be found to be disabled. If not, the ALJ is then required to assess the claimant's residual mental functional capacity. § 404.1520a(d)(3).

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making an RFC determination, the ALJ considers a claimant's physical abilities, mental abilities, and symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff had the mental RFC to perform simple entry level unskilled work in a low stress environment. (T at 15).  Specifically, he found that

8

Plaintiff had mild-to-moderate limitation in terms of sustaining concentration due to anxiety, depression, and difficulty with stress. (T at 15).  However, in the ALJ's view, the evidence nevertheless supported an ability to perform basic work-related mental activities. (T at 15).  The ALJ opined that Plaintiff could make simple decisions, but could not make complex decisions. He also determined that Plaintiff's work should not include planning, scheduling, report writing, supervising, high production quotas, or multi-tasking. (T at 15).  In addition, the ALJ noted that there should be very little change in Plaintiff's work environment or setting. (T at 15).

In May of 2006, Annette Payne, Ph.D. performed a consultative psychiatric examination.  Dr. Payne noted that Plaintiff was working part-time (approx. 16 hours/week) driving a van.  (T at 164).  She described Plaintiff's mood and affect as anxious and depressed. (T at 166).  Plaintiff's attention and concentration were "mildly impaired." (T at 166).  Her insight and judgment were described as fair. (T at 166).  Dr. Payne's ultimate conclusion was that Plaintiff's mental impairments were "mildly limiting." (T at 167).  She opined that Plaintiff could follow and understand simple directions and instructions and perform simple tasks. (T at 166).  Dr. Payne noted that Plaintiff would have difficulties with attention, concentration, maintaining a regular schedule, learning new tasks, and performing complex tasks. (T at 166-67).  Plaintiff would also have difficulties dealing with stress, making appropriate decisions, and relating with others. (T at 167).  The ALJ afforded "great weight" to Dr. Payne's assessment when determining Plaintiff's RFC. (T at 17).

Dr. Sumner Goodman, Plaintiff's treating psychiatrist, opined in February and March of 2008 that Plaintiff's mental status was "significant for depressed mood and tearfulness."

9

(T at 237).  Although Plaintiff was noted to be working part-time, Dr. Goodman indicated that Plaintiff was "impaired by significant residual of depression and anxiety and should be considered unable to work for gainful employment." (T at 237).  Dr. Goodman gave Plaintiff a Global Assessment Functioning ("GAF") score of 45. (T at 238).  "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" Pollard v. Halter, 377 F.3d 183, 186 n.1 (2d Cir. 2004).

In March of 2008, Dr. Goodman reported that Plaintiff was spending less time in bed, but experienced "waxing and waning" of her depression, combined with "exacerbations of anxiety, feelings of being overwhelmed," and an inability to "cope with day to day stressors." (T at 233).  Plaintiff was noted to be unable to work more than about ten hours without feeling "overwhelmed and exhausted." (T at 233).  Dr. Goodman again opined that, although Plaintiff was trying to sustain a part-time job, she was unable to maintain gainful employment due to depression and medical problems. (T at 233).

The ALJ gave Dr. Goodman's assessment "significant weight" as a treating source, but not controlling weight.  (T at 17).  This Court finds that the ALJ did not adequately develop the record in this regard.

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362

10

F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

Here, the ALJ concluded that Dr. Goodman's assessment that Plaintiff could not work more than 10 hours per week was "inconsistent with the consistent overall evidence." (T at 17).  The ALJ offered three reasons in support of his finding.  First, he concluded that "the evidence does not document any advanced clinical findings to support more than moderate limitations." (T at 17).  Second, the ALJ found that Dr. Goodman's opinion was contradicted by treatment notes from Plaintiff's medical providers, which "consistently document good hygiene, appropriate social skills and intact thought processes." (T at 17). Third, the ALJ found that Plaintiff's part time employment as a van driver demonstrated that she was "able to regularly follow a routine, concentrate, and adjust to changes." (T at 17).

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

These reasons are inadequate and do not constitute substantial evidence in support of the ALJ's determination.

It is not clear what "advanced clinical findings" the absence of which the ALJ is referring to in support of his conclusion.  His reference to advanced clinical findings suggests that he is substituting his own views concerning what medical findings are necessary in order to support a finding of disability. It is well settled in the Second Circuit that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998). The ALJ "is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion or testified before him." Id. (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983)); see Filocomo v. Chater, 944 F.Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

With all that said, there was a significant clinical finding supporting Dr. Goodman's opinions. As noted above, Dr. Goodman assigned a GAF score of 45, indicating very serious impairment.  Although this assessment was made in February of 2008, after the date last insured, there is no rule rendering evidence obtained subsequent to the date last insured irrelevant *per se*. To the contrary, as the Second Circuit has repeatedly observed:

> Evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement i.e., insured status was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.

Lisa v. Sec'y of Dept. of Health & Human Servs., 940 F.2d 40, 44 (2d Cir.1991) (quoting

Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 41-42 (2d Cir.1972)).  Moreover,

the ALJ did not cite the fact that Dr. Goodman's opinion was rendered after the date last

insured as a reason for discounting his assessment.

        Further, the ALJ afforded "significant weight" to Dr. Goodman's opinion, but did not

explain how he could give "significant" weight to an assessment of very serious impairment

and then conclude that Plaintiff's mental impairments were only mildly limiting.

        In addition, although Dr. Payne (the consultative examiner) described Plaintiff's

overall limitations as "mild," Dr. Goodman noted that Plaintiff's symptoms tended to "wax

and wane." As such, Dr. Payne's assessment of mild limitations (which was based on a

single exam) may have resulted from the examination having occurred during a period of

relative "waning."  In any event, Dr. Payne nevertheless opined that Plaintiff would have

difficulties with attention, concentration, maintaining a regular schedule, learning new tasks,

and performing complex tasks. (T at 166-67).  Further, Dr. Payne found that Plaintiff would

have difficulties dealing with stress, making appropriate decisions, and relating with others.

(T at 167).

        Moreover, Plaintiff's ability to perform part-time work was of limited relevance in the

context of the ALJ's decision to discount Dr. Goodman's findings given that (1) Dr.

Goodman specifically noted that performing any additional work left Plaintiff exhausted and

overwhelmed and opined that Plaintiff was not able to perform "gainful employment" (T at

233) and (2) the ALJ concluded that the part-time employment did not constitute substantial

gainful activity. See Melville v. Apfel, 198 F.3d 45, 53-54 (2d Cir.1999)(finding that

claimant's "past work experience, especially part-time work, is not 'relevant' unless, inter

alia, it was substantial gainful activity").  Further, the ALJ asked very few questions about the demands of Plaintiff's part-time work at the hearing (T at 305, 306) and asked no follow-up questions when Plaintiff testified that she "reduced [her] hours because [she] was getting overwhelmed . . . ." (T at 311).

Further, the ALJ's reference to clinical notes regarding Plaintiff's appearance and demeanor during medical examinations is unpersuasive.  Plaintiff's ability to maintain good hygiene and demonstrate adequate social skills during brief encounters with medical professionals are of limited relevance when compared to, for example, her ability to respond to changes in the work place and deal with stress.  "A substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), will substantially erode the unskilled sedentary occupational base and would justify a finding of disability." SSR 96-9p.  The mental activities generally required by competitive, remunerative, unskilled work include, *inter alia*, the ability to respond appropriately to usual work situations and to deal with changes in a routine work setting. SSR 96-9p.

In the discussion explaining his decision not to afford controlling weight to Dr. Goodman's assessment, the ALJ explained that Plaintiff's part-time work performance indicated an ability to "adjust to changes." (T at 17).   However, in his overall RFC assessment, the ALJ opined that Plaintiff's work environment or setting should include "very little change." (T at 15).  The ALJ did not reconcile this inconsistency.  Also, the indication that "very little change" was required suggests a substantial loss of ability to meet this basic work-related activity on a sustained basis.  The ALJ did not explain how the substantial loss of Plaintiff's ability to deal with changes in a routine work setting did not substantially erode

14

her unskilled occupational base.

Lastly, this Court is also troubled by the ALJ's failure to consult a vocational expert at step five of the sequential evaluation process.  At step five, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her RFC, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id. at 667 n. 2; see 20 C.F.R. §

15

404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06). When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id.  A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.; SSR 96-9p ("When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource.")

In this case, (1) the ALJ's RFC assessment indicated that Plaintiff's work environment  would need to include little or no changes, (2) the consultative examiner assessed difficulty relating to others, and (3) the treating psychiatrist opined that Plaintiff's level of functioning was significantly limited and that she was unable to sustain gainful employment.  Given these assessments, this Court finds that substantial evidence does not exist to support the ALJ's finding that Plaintiff's non-exertional limitations had "little or no effect" on her occupational base.

Accordingly, this Court recommends that this matter be remanded for further proceedings.  Specifically, the Commissioner should revisit the assessment of the treating psychiatrist's opinion.  To the extent that Dr. Goodman's opinion is not afforded controlling weight, the Commissioner should consider re-contacting Dr. Goodman to provide additional information, including (in particular) a retrospective assessment of Plaintiff's mental impairments during the period prior to the date last insured.   In addition, careful consideration should be given to whether consultation with a vocational expert is warranted given the nature and extent of Plaintiff's non-exertional impairments.

### b.    Physical Impairments

The ALJ concluded that Plaintiff retained the physical RFC to sit/stand/walk for 6 hours in an 8-hour workday, lift/carry 20 pounds occasionally and 10 pounds frequently, and could perform occasional bending. (T at 15). The ALJ's overall assessment was that Plaintiff was able to perform work at the light level of physical exertion.  This Court finds that the ALJ did not adequately develop the record in this regard and, in particular, with respect to Plaintiff's ability to stand and sit for prolonged periods.

It is well-settled that due to the "'essentially non-adversarial nature of a benefits

proceeding,'" the ALJ has an affirmative duty to develop the record. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) (quoting Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir.1982)); see also Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996). While "[t]his duty exists even when the claimant is represented," Perez, 77 F.3d at 47, it "is enhanced when the plaintiff is not represented by counsel." Williams v. Callahan, 30 F.Supp.2d 588, 595 (E.D.N.Y.1998).

Dr. Jonathan Wahl performed a consultative examination in May of 2006.  He opined that Plaintiff would have a "moderate" limitation with respect to prolonged standing and sitting. (T at 171).  It does not appear that any of Plaintiff's treating doctors provided an assessment of Plaintiff's ability to sit and/or stand for prolonged periods.  Given the consultative examiner's assessment of moderate limitation in this regard, the ALJ was obliged to seek out additional information from Plaintiff's treating providers before concluding that Plaintiff was capable of light work.

A job in "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10.  The only direct evidence in the record of Plaintiff's abilities in this regard is Dr. Wahl's non-specific indication of "moderate" limitation.  At a minimum, an assessment of moderate limitation suggests a possibility that prolonged standing might pose a problem.  As such, the ALJ erred by failing to seek out additional information.  This issue should therefore be revisited on remand.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405

18

(g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion be denied, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   January 18, 2011

Syracuse, New York

19

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 18, 2011

Victor E. Bianchini
United States Magistrate Judge